IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00464-RPM

RAFAEL CISNEROS and
MICHAEL ROMERO,

    Plaintiffs,
v.

JAY KIRBY and
JOHN BRADBURN, in their individual capacities,

    Defendants.
_____

ORDER OF DISMISSAL
_____

    The plaintiffs, Rafael Cisneros and Michael Romero, and the defendants, Jay Kirby and John Bradburn, are employees of the Colorado Department of Corrections ("CDOC"). Cisneros and Romero describe themselves as Hispanic citizens of Mexican-American heritage. The defendants are white men. The plaintiffs claim that this difference motivated the defendants to target them for criminal prosecution—that is, that the defendants discriminated against them because of their race and national origin in violation of federal law.

    In the Second Amended Complaint [Doc. 26] the plaintiffs allege violations of 42 U.S.C. § 1981 brought through 42 U.S.C. § 1983 ("First Cause of Action") plus denial of equal protection of the law and due process protected by the Fourteenth Amendment to the United States Constitution, also brought through 42 U.S.C. § 1983 ("Second Cause of

1

Action"). An additional claim is asserted for the tort of malicious prosecution under Colorado common law for which supplemental jurisdiction is invoked under 28 U.S.C. § 1367.

The defendants moved to dismiss the federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and the state claim for lack of jurisdiction pursuant to Rule 12(b)(1). [Doc. 27; Doc. 28.] For the reasons that follow, the plaintiffs have failed to overcome the defendants' entitlement to qualified immunity, requiring dismissal of the federal claims, and the state claim is dismissed without prejudice.

At the times relevant to this civil action, plaintiff Romero was a Warden at the Youthful Offender System ("YOS") facility in Pueblo, Colorado, and Cisneros was a Maintenance Lieutenant at that same facility. Defendant Bradburn was an investigator with the CDOC's Inspector General's Office under the supervision of defendant Kirby.

Bradburn was assigned to conduct a criminal investigation of Cisneros and Romero in November 2014. He wrote a report of his investigation in March 2015, which he sent to the District Attorney with the approval of Kirby.

Criminal charges were filed against Cisneros and Romero for official misconduct pursuant to C.R.S. § 18-8-404, misdemeanors based on alleged violations of CDOC Regulation No. 1450-06.

The plaintiffs first learned of these criminal charges by reading a newspaper on December 13, 2015. Cisneros was arraigned in January 2016, at which one count was dismissed. Romero was arraigned on May 11, 2016. All counts against him were dismissed

by the prosecutor on September 19, 2016. Cisneros went to trial on October 6-7, 2016, resulting in an acquittal by jury verdict.

The filed criminal charges did not contain factual allegations explaining the conduct upon which the charges were based. It is presumed that the District Attorney relied entirely on Bradburn's report. The plaintiffs claim that Bradburn knowingly or recklessly omitted from his report information which, if included, would have vitiated probable cause for the charges in violation of clearly established law. They cite *Stewart v. Donges,* 915 F.2d 572 (10th Cir. 1990). That case held that a detective alleged to have omitted the fact that a complaining witness in a theft case had recanted his allegations, admitting they were fabricated, before the affidavit for arrest was submitted would have violated the arrestee's rights under the Fourth and Fourteenth Amendments if that allegation proved to be true.

The Bradburn report is Exhibit A submitted with his reply in support of his motion to dismiss the Second Amended Complaint. [Doc. 43.] It begins with the following statement of the reason for the criminal investigation:

> Information was received indicating Lt. Ralph Cisneros was using inmates work crews to complete work for his personal business, he was going on trips paid for by vendors, he was coercing vendors into providing free services to Warden Romero, and that he was using state time and equipment to perform work for his private company.

[*Id.* at 2.]

The report includes detailed summaries of interviews conducted in this investigation. A fair summary is that none of them could support the rumored allegations that Cisneros attended the Super Bowl or that inmate labor was used to do work at Roselawn Cemetery that

3

was included in a contract between it and Cisneros Construction Company, owned by Cisneros.

The principal paragraphs that resulted in the decision to refer the matter to the District Attorney are these:

> From the outside looking in, it is easy to speculate Cisneros Construction is getting paid for the work completed by the YOS Phase II Inmates. Grounds maintenance is a broad term and can mean several different things. Since Lt. Cisneros is a full time employee of YOS, and the owner of Cisneros Construction, a conflict of interest appears to be present in this situation. However, there was no evidence discovered indicating he was getting paid for the work being completed by the YOS Inmates.

[*Id.* at 28.]

> While the Fastenal trips attended by Lt. Cisneros may not have been a direct result of the purchases he made as a DOC employee, they did influence and encourage him to spend more money with Fastenal. During the time period July 1, 2011 to November 2014, it was recorded by the DOC Controller Mr. Merriam, that Lt. Cisneros spent a total of $10931.31 at Fastenal. An evaluation of actual sales receipts taken from Lt. Cisneros self maintained p-card logs for the period January 1, 2013 to October 20, 2014 revealed he spent a total of $9882.26. This identifies, during the nearly three and a half years outlined in the report provided by the controllers office, that it was not until after Lt. Cisneros returned from his trip with Fastenal that his purchases from Fastenal quickly escalated, spending just over $1000 with Fastenal from July 1, 2011 to December 31, 2013, then during the period January 1, 2013 till October 20, 2014 spending nearly ten thousand[] dollars.

> This extreme escalation in spending habits is a clear violation of the State of Colorado Procurement Code of Ethics. Which states "Never solicit or accept money, loans, credits, or prejudicial discounts, and avoid the acceptance of gifts, entertainment, favors, or services from present or potential suppliers which might influence, or appear to influence purchasing decisions." The trip provided to Lt. Cisneros by Fastenal did influence and in fact increase his spending with Fastenal. As a p-card holder and by signing a copy of the "State of Colorado Department of Corrections Commercial Card Holder Agreement," Lt. Cisneros should have been fully aware his actions were in violation.

[*Id.* at 29.]

It is unclear how the exact relationship between Mountain West Glass, Jay Picco, and Warden Romero was developed. However, during interviews and by the admission of both Jay Picco and Warden Romero, Warden Romero was provided service by Mountain West Glass at no charge. All parties involved including Lt. Cisneros deny there was any favoritism or wrongdoing involved in this free gift. The extent of Lt. Cisneros's influence in this situation is unclear. Mr. Picco, Warden Romero, and Lt. Cisneros deny there was any form of coercion or threat made about losing or altering any business relationship Mr. Picco had with the state of Colorado.

Not all accounts of this situation are the same., but Lt. Cisneros does admit to letting Mountain West Glass know Warden Romero was his supervisor. Mr. Picco admits to doing a lot of business with the state. Therefore, it is reasonable to believe that the work done by Mountain West Glass for Warden Romero was done because of Warden Romero's position with DOC.

[*Id.* at 29-30.]

Evidence was discovered during this investigation that Lt. Cisneros does use State equipment and time to complete work for Cisneros Construction. This was obvious once his emails were reviewed. There was also evidence of it on both his state office phone and his state issued cellular phone. However, there is no way to prove how much time Lt. Cisneros is spending on private business as compared to state business while working for DOC. It is possible all the phone calls and emails were completed while Lt. Cisneros was on a break.

The use of state equipment for personal business is obvious with the emails that were discovered. The use of state equipment is strictly prohibited for personal gain as outlined in AR1200-06A. On February 9, 2011, Lt. Cisneros signed and agreed to these rules prior to being given access to the internet.

[*Id.* at 30.]

Fastenal was an approved vendor for the CDOC, and Cisneros had authority to purchase from it using a CDOC credit card. Mountain West Glass replaced a broken mirror in a gym owned by Romero without payment.

5

Prompted by the submission of the Bradburn report to the DA, in April 2015 the Deputy Director of YOS, Alison Morgan, initiated professional standards investigations of Lt. Cisneros and Warden Romero and also submitted the matter to an ethics board for independent review. The professional standards investigation and the independent ethics review involved "the same information as the information submitted for criminal prosecution." [Doc. 26 at ¶¶ 47, 50, 52.] In June 2015, Deputy Director Morgan issued a "Notice of Resolution of Investigation; Notice of No Finding of Misconduct" to both Plaintiffs stating that "the allegation raised against you in the professional standards investigation is unfounded." [*Id.* at ¶¶ 7-8, 49-50, 52-53, 55.] The ethics board also found no wrongdoing by either Plaintiff. Defendants Bradburn and Kirby both had knowledge that Plaintiffs were cleared in the professional standards and ethics board investigations, but they did not pass that information on to the DA.

It is that omission that the plaintiffs contend is comparable to the *Stewart* case. The difference is that the Bradburn report did not result in an arrest in violation of the Fourth Amendment. Neither defendant submitted a probable cause affidavit for an arrest. It is a bare assumption that the DA's office relied exclusively on Bradburn's report. It is notable that no criminal charges were filed until December 1, 2015, nine months after the DA received Bradburn's report. That delay strongly suggests that some additional information was obtained before filing the charges.

This is not a case for a Fourth Amendment violation. This is an adverse employment case based on race and ethnicity discrimination.

6

A criminal charge can be considered as an adverse employment action. That was recognized by the Tenth Circuit Court of Appeals in *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996). There were transfers and stigmatization of the plaintiffs in the workplace, and their authority was altered. The plaintiffs have adequately alleged adverse employment action resulting from the charges.

The fatal defect in the Second Amended Complaint is the failure to allege any facts to support the necessary showing that Bradburn or Kirby was motivated by any bias or animus toward the plaintiffs because they are Hispanic citizens of Mexican-American heritage. Circumstantial evidence may support such a claim if there can be a fair inference drawn from the factual allegations. That is not this case.

Even if one were to draw an inference of some discriminatory intent, the defendants are shielded from liability by the doctrine of qualified immunity. To overcome that defense, the plaintiffs must identify such clearly established law that the defendants would know that they were violating the statute and the Constitution.

These defendants are not trained police officers who would be aware of what constitutes probable cause for a criminal charge. Bradburn's report was given to the DA's office to make that evaluation.

To show that their conduct was contrary to clearly established law the plaintiffs must cite to a Supreme Court or Tenth Circuit case holding that a civilian employee assigned to conduct an investigation of other employees as an inspector general is held to the same

standard as a trained law enforcement officer in seeking a warrant for an arrest of the subjects of that investigation. No such case has been cited.

Because the defendants are entitled to qualified imuity, the First and Second Causes of Action in the second amended complaint are dismissed with prejudice and the Court will not exercise supplemental jurisdiction on the state law claim in the Third Cause of Action which is dismissed without prejudice. This civil action is dismissed.

SO ORDERED.

DATED: March 30, 2018

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge